# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRYSTAL THOMAS, *as administratrix of the estate of Louis Thomas*,<br>      Plaintiff,<br><br>v.<br><br>COUNTY OF CHESTER, POCOPSON HOME, *et al.*,<br>      Defendant. | CIVIL ACTION NO. 17-4737 |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                              **May 15, 2018**

Plaintiff Crystal Thomas brings this wrongful death and survival action in her capacity as administratrix of the estate of her father, Louis Thomas. Mr. Thomas was admitted to County of Chester, Pocopson Home for long-term nursing care, but died months later due to severe malnutrition, dehydration, sepsis, and kidney failure. Plaintiff raises six claims against Pocopson Home and Dr. Nadeem Paroya, Mr. Thomas's attending physician, including (a) two claims against Pocopson Home pursuant to 42 U.S.C. § 1983, alleging it provided deficient care in violation of Mr. Thomas's statutory rights, (b) two claims against Pocopson Home under Pennsylvania law, alleging wrongful death and survival actions, and (c) two claims against Dr. Paroya under Pennsylvania law, also alleging wrongful death and survival actions.[1] Defendants have moved to dismiss.[2] For reasons that follow, the motion to dismiss filed by Pocopson Home will be granted in part and denied in part, and the motion to dismiss filed by Dr. Paroya will be denied.

---

[1] *See* 42 Pa. C.S. §§ 8301, 8302.

[2] Dr. Paroya also filed a Motion to Join Pocopson Home's Motion to Dismiss, which will be granted.

I.  **BACKGROUND**

The Second Amended Complaint alleges the following facts, which are assumed to be true for purposes of the Motions to Dismiss. Pocopson Home is a long-term care nursing facility owned and operated by Chester County, Pennsylvania.[3] On June 19, 2016, Louis Thomas was admitted to Pocopson Home because he suffered from chronic kidney disease and vision deficit.[4] Mr. Thomas also experienced impaired mobility and incontinence episodes, requiring long-term nursing care. Pocopson Home is a long-term care nursing facility owned and operated by Chester County, Pennsylvania.[5] Upon admission, Mr. Thomas did not have any bed sores and was given a prognosis of "stable" and "good" rehabilitation potential.[6] Despite this prognosis, Mr. Thomas's health declined during his stay at Pocopson Home, ultimately ending in his death less than a year later.

Plaintiff alleges Mr. Thomas was mistreated at Pocopson Home. For example, Pocopson staff allegedly verbally and physically abused Mr. Thomas by calling him names and even, in one instance, slamming him against a wall.[7] Mr. Thomas also experienced recurring mistreatment when he sought assistance with his meals. Legally blind, Mr. Thomas was unable to see the meals in front of him and needed help identifying each food. Pocopson staff, however, "would simply slam his meal tray on the table and then leave, instead of describing the food or placement to him."[8] As a result, his meal and fluid consumption was drastically reduced.

In February 2017, Mr. Thomas's health sharply declined. His medical charts documented

---

[3] Second Am. Compl. at ¶¶ 7-8.

[4] *Id.* at ¶ 21.

[5] *Id.* at ¶ 18.

[6] *Id.* at ¶¶ 30-31.

[7] *Id.* at ¶¶ 39-41.

[8] *Id.* at ¶¶ 42, 44.

2

a decrease in food and fluid intake, as well as marked weight loss. On February 22, 2017, his "chart indicated that he . . . had an 11 lb. weight loss in 30 days" and "was only accepting 50% of most meals and had decreased snacking."[9] By March 8, 2017, Mr. Thomas's charts indicated that he had lost 28 pounds overall and had a "poor intake" of foods and fluids, consuming only "bites" of food and "juice with medication."[10] Throughout this period, Dr. Paroya was repeatedly made aware of Mr. Thomas's decreased intake and weight loss, "but did not order a dietary consultation and made no changes to his care plan."[11]

On March 13, 2017, Mr. Thomas's breathing became labored, and he was rushed to Chester County Hospital. Hospital staff diagnosed Mr. Thomas with acute metabolic encephalopathy, kidney failure, and hypovolemic shock due to severe malnutrition and dehydration.[12] Mr. Thomas had lost of total of 34 pounds in less than six weeks.[13] In addition, hospital staff diagnosed Mr. Thomas with "severe sepsis from a genitourinary source," associated with incontinence that was not properly handled at Pocopson Home. Mr. Thomas also was suffering from bed sores that had not been noticed or documented by Defendants.[14] On March 17, 2017, Mr. Thomas was discharged to inpatient hospice, where he died the next day.

## II. LEGAL STANDARD

Dismissal for failure to state a claim is appropriate if the complaint fails to allege facts sufficient to establish a plausible entitlement to relief.[15] In evaluating a motion to dismiss for

---

[9] *Id.* at ¶ 56.

[10] *Id.* at ¶¶ 63, 66-67, 69-71.

[11] *Id.* at ¶¶ 52, 59, 63-64.

[12] *Id.* at ¶¶ 83, 85-86.

[13] *Id.* at ¶ 79.

[14] *Id.* at ¶ 81.

[15] *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

3

failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court "take[s] as true all the factual allegations of the [complaint] and the reasonable inferences that can be drawn from them," but "disregard[s] legal conclusions and recitals of the elements of a cause of action, supported by mere conclusory statements."[16] Instead, to prevent dismissal, a complaint must "set out sufficient factual matter to show that the claim is facially plausible."[17] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[18]

## III. ANALYSIS

### A. Immunity Pursuant to Pennsylvania's Political Subdivision Tort Claims Act

Pocopson Home argues that because it is owned and operated by Chester County, the Pennsylvania Political Subdivision Tort Claims Act[19] ("PSTCA") bars all claims against it. Under the PSTCA, municipalities and local agencies are immune from liability "for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."[20] This immunity is waived "to the extent the agency would otherwise be liable for a narrow subset of negligent acts by its agents or employees."[21] Although the immunity conferred by the PSTCA is "effective against a state tort claim," it "has no force when applied to suits under the Civil Rights Act."[22]

---

[16] *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

[17] *Fowler*, 578 F.3d at 210 (citation and internal quotation marks omitted).

[18] *Santiago*, 629 F.3d at 128 (citation and internal quotation marks omitted).

[19] 42 Pa. C.S. § 8541, *et seq.*

[20] 42 Pa. C.S. § 8541.

[21] *Joyner v. Sch. Dist. of Philadelphia*, 313 F. Supp. 2d 495, 504 (E.D. Pa. 2004) (internal quotation marks and citations omitted). The subset of acts includes those associated with: (1) vehicle liability, (2) care, custody or control of personal property, (3) real property, (4) trees, traffic controls and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks, and (8) care, custody or control of animals. 42 Pa. C.S. § 8542(b).

[22] *Wade v. City of Pittsburgh*, 765 F.2d 405, 407 (3d Cir. 1985).

Here, the state law wrongful death and survival actions stemming from the alleged negligent care of Mr. Thomas are not acts for which immunity is waived. Plaintiff contends the statutory "willful misconduct" exception applies to these state law causes of action.[23] But, Pennsylvania and federal courts have consistently held that this exception applies only to the immunity of agency employees, and not to the agencies themselves.[24] Thus, the state law claims against Pocopson Home will be dismissed with prejudice.[25]

### B. Municipal Liability Under Section 1983

Pocopson Home also moves to dismiss Plaintiff's § 1983 claims.[26] Section 1983 "is a vehicle for imposing liability against anyone who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution and laws."[27] Plaintiff has alleged that Pocopson Home is a long-term nursing care facility that is owned and operated by Chester County, and that its actions were taken under the color of state law.[28] Plaintiff also alleged that Pocopson Home staff violated provisions of the Federal Nursing Home Reform Act ("FNHRA"), and the Third Circuit has held that the FNHRA "confer[s] individual rights that are presumptively enforceable through § 1983."[29]

---

[23] *See* 42 Pa. C.S. § 8550.

[24] *Viney v. Jenkintown Sch. Dist.*, 51 F. Supp. 3d 553, 557 (E.D. Pa. 2014).

[25] Pocopson Home also argues that the state law claims in Counts III and IV of the Second Amended Complaint should be dismissed because Plaintiff cannot demonstrate that it can be held liable under a corporate liability theory. Since these claims will be dismissed with prejudice on immunity grounds, the Court need not decide this issue.

[26] As noted, the PSTCA does not affect § 1983 claims. *See Massey v. Fair Acres Geriatric Ctr.*, 881 F. Supp. 2d 663, 665-66 (E.D. Pa. 2012) (explaining that the PSTCA "bars any claim based on common law negligence" against the county-owned nursing home, without regard to the plaintiff's separate § 1983 claim); *see also Moyer v. Berks Heim Nursing Home*, No. 13-4497, 2014 WL 1096043, at *5 (E.D. Pa. 2014) (dismissing state law claims for negligence and medical malpractice against county-owned nursing home under the PSTCA, but concluding that the plaintiff's § 1983 claim is separate and distinct from these state law counts).

[27] *Grammer v. John J. Kane Reg'l Ctrs.*, 570 F.3d 520, 525 (3d Cir. 2009) (internal quotation marks and citations omitted).

[28] Second Am. Compl. at ¶¶ 18, 109.

[29] *Grammer*, 570 F.3d at 532.

In addition, to state a § 1983 claim, a plaintiff must plead that the alleged violation was "caused by action taken pursuant to a municipal policy or custom."[30] A "policy" is made "when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict."[31] A "custom" includes "practices of state officials . . . so permanent and well settled as to constitute a 'custom or usage' with the force of law."[32] In a recent, unpublished decision addressing the standard for municipal liability under § 1983 against a county-owned nursing home, the Third Circuit explained that:

> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. First, an employee's action can be said to result from a policy or custom where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. Alternatively, a challenged action can be considered the result of a policy or custom where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, we treat actions as being the result of policy or custom where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.[33]

The Second Amended Complaint states that Pocopson Home failed to comply with more than twenty separate provisions of the FNHRA and/or its regulations.[34] These include allegations that Pocopson Home "fail[ed], as a custom or policy, to develop a comprehensive care plan for patients, including Louis Thomas, as required by 42 C.F.R. § 484.30 and 42 U.S.C.

---

[30] *Robinson v. Fair Acres Geriatric Ctr.*, No. 16-3341, 2018 WL 871463, at *2 (3d Cir. Feb. 14, 2018).

[31] *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (internal quotation marks, brackets, and citation omitted).

[32] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

[33] *Robinson*, 2018 WL 871463, at *2 (internal quotation marks, brackets, and citations omitted).

[34] Second Am. Compl. at ¶ 112.

§ 1369r(b)(2),"[35] and "fail[ed], as a custom and policy to provide sufficient nursing staff to provide . . . services that would allow patients or residents, including Louis Thomas, to attain or maintain the highest practicable, physical, mental, and psychological well-being, as required by 42 C.F.R. § 483.30 and 42 U.S.C. § 1396r(b)(4)(c)."[36] No additional factual material about Pocopson Home's policy or custom is provided in the Second Amended Complaint.

Plaintiff's references to the policy or custom of Pocopson Home are only conclusory, and Plaintiff does not allege that Mr. Thomas's death was "caused by affirmative actions on the part of a particular policymaker," so Plaintiff cannot proceed on the first two means of establishing liability.[37] However, Plaintiff may proceed on the third means of establishing liability, as she has set forth facts to support a claim that Pocopson Home was deliberately indifferent to the needs of Mr. Thomas and failed to train its staff.[38] The Second Amended Complaint alleges that Mr. Thomas underwent dramatic weight loss in a six week period, and that Pocopson Home staff was aware of his weight loss, but refused to assist him with his meals or to develop a plan to ensure that he was eating and drinking enough.[39] Instead, the staff simply recorded his lack of sustenance and concomitant decline. As a direct result of the alleged inaction, Mr. Thomas arrived at Chester County Hospital in a state of severe dehydration and malnutrition, and died less than a week later.[40] Accepting all factual allegations as true, the Court finds that Plaintiff

---

[35] *Id.* at ¶ 112(e).

[36] *Id.* at ¶ 112(o).

[37] *Robinson*, 2018 WL 871463, at *2.

[38] *See id.* at *2-3 (concluding that the plaintiff could not proceed on the first two means of establishing liability, but that he had stated a claim under § 1983 for municipal liability under a deliberate indifference theory); *see also Doyle v. Neshaminy Manor, Inc.*, No. 18-98, 2018 WL 1954119, at *4-5 (E.D. Pa. Apr. 25, 2018) (same).

[39] Second Am. Compl. at ¶¶ 42, 44.

[40] *See Doyle*, 2018 WL 1954119, at *5 ("However, given that Plaintiff alleged that [the decedent] underwent severe weight fluctuations, Defendant allegedly seldom if ever kept records of [the decedent's] intake (while prescribing prescriptions with side effects of dehydration) and [the decedent] apparently arrived twice at Doylestown Hospital from Neshaminy Manor in a state of dehydration (the second time in a state of 'severe dehydration'), the Court finds

has stated sufficient facts for the § 1983 claims to proceed on a deliberate indifference theory.

### C. Wrongful Death and Survival Actions Against Dr. Paroya

Dr. Paroya moves to dismiss the state law claims raised against him by arguing that the Court should decline to exercise supplemental jurisdiction over these claims. A district court has discretion to exercise supplemental jurisdiction over state law claims that arise out of "a common nucleus of operative fact" with the accompanying federal claims.[41] The court may nonetheless decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.[42]

Here, Plaintiff's state law wrongful death and survival actions against Dr. Paroya share a common nucleus of operative fact with her § 1983 claims against Pocopson Home, as all claims arise from Defendants' alleged improper care and treatment of Mr. Thomas while at the nursing home. Furthermore, as none of the circumstances to decline jurisdiction are present, the Court will exercise supplemental jurisdiction over the claims against Dr. Paroya.

### D. Punitive Damages

Both Defendants move to dismiss Plaintiff's request for punitive damages. In Pennsylvania, punitive damages require "willful or wanton conduct or reckless indifference to the rights of others."[43] Taking all factual allegations as true and viewing the pleadings in the

---

that Plaintiff has stated sufficient facts on her wrongful death and survival claims under 42 U.S.C. § 1983 on a deliberate indifference theory.").

[41] *Ambromovage v. United Mine Workers of America*, 726 F.2d 972, 989 (3d Cir. 1984) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

[42] 28 U.S.C. § 1367(c).

[43] *Stroud v. Abington Mem. Hosp.*, 546 F. Supp. 2d 238, 257 (E.D. Pa. 2008) (citing 40 P.S. § 1303.505(a)).

light most favorable to Plaintiff as the nonmoving party, the allegations in the Second Amended Complaint are sufficient to meet this standard at this stage in the litigation.[44]

### E. Amendment of the Complaint

Plaintiff has not requested leave to further amend the Second Amended Complaint. Federal Rule of Civil Procedure 15(a) provides that the Court should "freely give leave [to amend] when justice so requires."[45] Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility.[46] "[A] district court need not grant leave to amend . . . if 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'"[47] Further amendment of Plaintiff's state law claims against Pocopson Home would be futile as it will not change the determination of the county-owned nursing home's immunity under the PSTCA with respect to these claims.

## IV. CONCLUSION

For the reasons set forth above, Pocopson Home's Motion to Dismiss will be granted in part and denied in part, and Dr. Paroya's Motion to Dismiss will be denied. An appropriate order follows.

---

[44] *See McCain v. Beverly Health and Rehabilitation Servs.*, No. 02-657, 2002 WL 1565526, at *2, n.6 (E.D. Pa. July 15, 2002) (concluding that the allegations in the complaint were sufficient to state a request for punitive damages against a nursing home where it alleged that the nursing home knew of the decedent's high risk for developing pressure sores and nevertheless transported the decedent in an ill-fitting wheelchair that caused such sores and made no attempt to change the method of transportation).

[45] Fed. R. Civ. P. 15(a)(2).

[46] *In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

[47] *Kundratic v. Thomas*, 407 F. App'x 625, 630 (3d Cir. 2011) (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)).